UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                CASE NO. 16-26113-RBR
                                                       CHAPTER 7

ENDLESS JEWELRY NORTH
AND SOUTH AMERICA, LLC,

        Debtor.
_____/

**MOTION OF CHAPTER 7 TRUSTEE MARC P. BARMAT TO
APPROVE: (i) SETTLEMENT AND COMPROMISE OF
CONTROVERSY WITH FORMER DIRECTORS, OFFICERS, MANAGERS,
CONTROL PERSONS, AND/OR EMPLOYEES OF DEBTOR**

**AND**

**(ii) REQUEST FOR ENTRY OF ORDER AUTHORIZING PAYMENT
OF EARNED 40% CONTINGENCY FEE TO TRUSTEE'S SPECIAL
LITIGATION COUNSEL AND GENERAL COUNSEL**

Marc P. Barmat (the "Trustee"), Chapter 7 Trustee for the Estate (the "Estate") of Endless

Jewelry North and South America, LLC (the "Debtor" or "Endless Jewelry"), files this Motion to

Approve: (i) Settlement and Compromise of Controversy with Former Directors, Officers,

Managers, Control Persons, and/or Employees of Debtor, and (ii) Request for Entry of Order

Authorizing Payment of Earned 40% Contingency Fee to Trustee's Special Litigation Counsel and

General Counsel (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure, and in support thereof, states:

**INTRODUCTION**

1.      By this Motion, the Trustee seeks: (i) approval of a **$750,000.00** settlement and

compromise (the "Settlement") with the following former directors, officers, managers, control

persons, and/or employees of the Debtor (individually an "Insured" and collectively, the

"Insureds"): (a) Matthew Carlozzi ("Carlozzi"), (b) Avinash Tiwari ("Tiwari"), (c) Howard Clarke ("Clarke"), and (d) Ulrik Rasch ("Rasch") (the Insureds and the Trustee shall hereinafter be referred to as the "Parties"), with the settlement to be funded by Federal Insurance Company (the "Insurer"), in connection with pre-suit claims and demands of the Trustee based upon, among other things, director and officer liability claims against the Insureds; and (ii) the entry of an order authorizing payment of the earned 40% contingency fee to Trustee's special litigation counsel and general counsel.

2.      For the reasons stated herein, the relief requested in this Motion should be granted because, among other reasons: (i) the terms of the Settlement, as set forth in the executed Settlement Agreement attached hereto as **Exhibit A** (the "Settlement Agreement"), satisfy the *Justice Oaks* standards, and are fair, reasonable, and in the best interests of the Debtor's creditors and the Estate; and (ii) the Retention Orders (defined and described below) provide, among other things, that the Trustee is authorized to request approval and payment of the 40% contingency fee earned by special litigation counsel, Cimo Mazer Mark PLLC ("CMM") and Genovese Joblove & Battista, P.A. ("GJB"), and general counsel, FurrCohen, P.A. ("FurrCohen"), in connection with this Motion, to be allocated by separate order amongst the law firms in accordance with the Court's previously entered employment orders. [ECF Nos. 71, 106, and 172].

3.      Based upon the Trustee's evaluation of: (i) the Trustee claims against the Insureds, (ii) the defenses raised and asserted by the Insureds; (iii) the defense costs incurred to date defending the Trustee claims, (iv) the anticipated defense costs that will continue to be incurred defending the Trustee claims absent a settlement, and (v) the costs and risks to the Estate associated with litigation at both the trial and appellate levels, the Trustee believes that the Settlement is fair, reasonable and is in the best interests of the Estate, and should therefore be approved.

## FACTS SUPPORTING RELIEF REQUESTED

4.      On December 2, 2016, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

5.      Thereafter, Mr. Barmat was appointed as Chapter 7 Trustee of the Estate of the Debtor.   As Trustee, Mr. Barmat has the exclusive power, authority, and standing, among other things, to (i) investigate, prosecute, compromise, and otherwise resolve, any and all claims of the Debtor's Estate against the Debtor's former directors, officers, managers, control persons, and/or employees, whether by way of claim, counterclaim, cross-claim, lawsuit, adversary proceeding, bankruptcy proceeding or filing, or other proceeding in law, equity, or otherwise (the "D&O Claims"), and (ii) analyze, object to, and/or seek equitable subordination or recharacterization of claims filed or asserted against the Debtor's Estate by the Debtor's former directors, officers, managers, control persons, and/or employees (the "D&O Claim Objections").

6.      Following his appointment, the Trustee and his court-appointed professionals engaged in a pre-suit investigation in respect of the D&O Claims and D&O Claim Objections.   As part of his investigation, the Trustee reviewed and investigated Tiwari Proof of Claim No. 16 (the "Tiwari Claim"), and Carlozzi Proof of Claim No. 19, as amended (the "Carlozzi Claim"), filed against the Debtor's Estate.

7.      Prior to the Petition Date, the Insurer, an affiliate of Chubb Group of Insurance Companies (the "Insurer"), issued a ForeFront Portfolio 3.0 Directors & Officers and Entity Liability Insurance Policy, Policy No. 8242-6648 (the "Policy"), to the Debtor with aggregate policy limits of $1,000,000 (the "Policy Limits") and a policy period of April 21, 2016 to April 21, 2017.

8.      The Policy is a wasting asset limit of liability policy, meaning that the policy

proceeds diminish as defense fees and costs are incurred and paid prior to any determination of liability on the underlying claims, thereby reducing the amount available to respond to settlements and judgments. The fact that the Policy is a wasting asset policy is a critical factor in evaluating the proposed Settlement because the Settlement recovers 75% of the face value of the Policy.

9.      The Trustee timely asserted D&O Claims and D&O Claim Objections against the Insurer and Insureds, as applicable, in the form of an Insurance Demand and a draft Complaint.

10.     The Insureds have denied any and all liability in connection with the D&O Claims and D&O Claim Objections, and the Trustee denies any and all liability in connection with the Tiwari Claim and Carlozzi Claim.

11.     The Insurer is and has been advancing defense fees and costs to at least two well-respected law firms representing the Insureds in connection with the D&O Claims.   Fees and costs will continue to accrue and deplete the policy proceeds absent approval of the Settlement.

12.     Based upon the defense fees and costs that have been incurred and/or paid from the Policy to date, prior to commencement of litigation, the complexity of the D&O Claims, and the $1 million policy limits, the Trustee anticipates that the Policy will be completely or substantially depleted by defense costs through years of future litigation through trial and potentially multiple appellate court levels.

13.     By agreement of the Parties, the Bankruptcy Court entered an order directing, among other things, that the Parties participate in and attend a mediation conference (the "Mediation") in connection with the D&O Claims [ECF No. 135].

14.     The Parties and the Insurer participated in the Mediation on June 28, 2018 before the Honorable Judge John K. Olson.

4

## THE SETTLEMENT

15.    As a result of the Mediation and related exchange of information and documents, the Parties agreed that it was in the best interests of all involved to amicably resolve the D&O Claims, the D&O Claim Objections, the Tiwari Claim, and the Carlozzi Claim on the terms and conditions set forth in the Settlement Agreement.

16.    To this end, the Parties entered into the Settlement Agreement attached hereto as Exhibit A, the material terms of which are as follows:[1]

> a.  For and in consideration of each of the terms of the Settlement Agreement, and without any party admitting liability to the other, as full and final settlement of the D&O Claims and any and all claims which have been or could be asserted by the Trustee against the Insureds or Insured Persons, the Insureds shall cause the Insurer to pay on the Insureds' behalf the sum of SEVEN HUNDRED FIFTY THOUSAND DOLLARS AND 00/100 ($750,000.00 U.S.) (the "Settlement Payment").
>
> b.  The Insurer shall pay the Settlement Payment in the form of a check for good and collectable funds made payable to "Marc P. Barmat, Chapter 7 Trustee of the Endless Jewelry North and South America, LLC Bankruptcy Estate", which check shall be tendered to the Trustee at his office address: c/o Marc P. Barmat, Chapter 7 Trustee, FurrCohen, P.A., 2255 Glades Road, Suite 301 East, Boca Raton, FL 33431, via Federal Express.

---

[1] Creditors and parties in interest are urged to read the entire Settlement Agreement. To the extent the summary of settlement terms referenced in this Motion is inconsistent with the provisions of the Settlement Agreement, the provisions of the Settlement Agreement shall control. All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

c. The Insurer shall pay the Settlement Payment within ten (10) days of the Final Order (satisfaction of each condition of Paragraph 2(A) and 2(B) of this Agreement and receipt of a W-9 for the Trustee, whichever is later). The Parties understand that no Insured is obligated to make all or part of the Settlement Payment.

d. Notwithstanding anything to the contrary in the Settlement Agreement, in full and final satisfaction of the Carlozzi Claim, the Tiwari Claim, and the D&O Claim Objections: (i) Carlozzi shall have an allowed claim against the Estate in the amount of $350,000, with $12,850 constituting a priority claim pursuant to 11 U.S.C. §507(a)(4) and $337,150 constituting a general unsecured claim; and (ii) Tiwari shall have an allowed general unsecured claim in the amount of $274,559.

e. Mutual releases as described in Paragraphs 3 and 4 of the Settlement Agreement.

17. The Parties are aware that the Settlement must be noticed to all creditors and parties in interest and must be approved by the Court. In the order approving the Settlement, the Court shall retain jurisdiction regarding the interpretation, effectuation, and enforcement of the terms of the Settlement Agreement.

## REQUEST FOR APPROVAL OF SETTLEMENT

**A.    Settlement Approval Standards in the Eleventh Circuit**

18. Bankruptcy Rule 9019 (a) provides:

On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

6

19.     Rule 9019(a) gives the Court broad authority in approving compromises or settlements.  *See, e.g., In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) (*citing In re Charter Co.*, 72 B.R. 70 (Bankr. M.D. Fla. 1987)).   The determination of whether to approve a compromise is a matter committed to the sound discretion of the bankruptcy judge. *River City v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602-603 (5th Cir.1980).   In exercising this discretion, the court should approve the proposed settlement if it is in the best interests of the estate. *Id*.

20.     In determining whether a proposed compromise is in the best interests of the estate, the Bankruptcy Court should consider the following factors: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interests of the creditors and a proper deference to their reasonable views in the premises. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.1990), *cert. denied*, 498 U.S. 959, 111 S. Ct. 387, 112 L. Ed. 2d 398 (1990).   A court considering the approval of a settlement need only determine whether the settlement falls below the lowest point in the range of reasonableness. *See In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988); *In re Martin*, 91 F.3d 389 (3d Cir. 1996).

**B.     Each *Justice Oaks* Factor Is Satisfied by the Settlement**

### *The First Factor – The Probability of Success in the Litigation*

21.     Although the Trustee strongly believes in his ability to prevail on the Trustee claims, he also recognizes that litigation of the D&O Claims will involve material factual and legal disputes related to decisions made, and actions taken and/or inaction, during the course of the

Debtor's business, and that the Insureds intend to assert a number of defenses. The Trustee also recognizes that the Insureds have advised of their intention to vigorously defend any filed litigation through trial, and at all available appellate levels, if a settlement could not be reached.   The Settlement addresses the risks and uncertainty of litigation in connection with the Trustee claims by recovering a material settlement payment – $750,000.00 – for the benefit of the Estate and creditors.

### *The Second Factor – The Difficulties, if any, to be Encountered in the Matter of Collection*

22.    As stated above, the only available insurance to pay the D&O Claims is the Policy, which is a $1,000,000 wasting asset limit of liability policy.   The Trustee is concerned that litigation of the Trustee claims through trial and potentially multiple appellate court levels would likely serve to completely or substantially deplete the remaining Policy proceeds through defense costs that will continue to be incurred absent a settlement.   Because litigation would substantially, if not completely, deplete the Policy, this factor supports approval of the Settlement. The Estate would encounter material impediments to collection if required to litigate the D&O Claims against the Insureds through the conclusion of trial and any appeals if litigation is filed.

### *The Third Factor – The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Involved*

23.    The D&O Claims involve challenges to actions and inactions by the Insureds over a course of several years in connection with the operations and business dealings and transactions of the Debtor.   The claims will be complex and expensive to pursue given the facts, circumstances, and legal theories that form the basis of the D&O Claims against the Insureds, which will require, among other tasks, significant factual discovery and substantial expert witness testimony at trial at significant expense to the Estate.   Litigation against the Insureds would be

very costly for the Estate because of, among other things, the large number of witnesses that would be required to testify at trial.   Further, the Trustee believes that regardless of the outcome at the trial level, there is a high probability the matter would be appealed.   The costs associated with litigating these issues through the appellate levels would be significant and would necessarily result in significant delay to the administration of the Estate and ultimate closure of this case. These substantial costs borne by the Estate would be in addition to the opportunity costs in the form of depletion of the Policy attendant to litigation.

### *The Fourth Factor – The Paramount Interest of the Creditors' Reasonable Views*

24.    The Settlement provides the Estate with an opportunity to efficiently settle significant claims on favorable terms, without the need for costly and protracted litigation through trial and exhaustion of appellate remedies.   The Settlement provides the Estate with a significant recovery – $750,000.   As such, the Settlement serves the paramount interest of creditors.

25.    Here, the Settlement, as set forth in the Settlement Agreement, meets the *Justice Oaks* standards for approval of compromises and, therefore, approval is proper pursuant to Bankruptcy Rule 9019.

26.    Specifically, the Settlement: (i) is fair and reasonable; (ii) falls within the reasonable range of possible litigation outcomes; and (iii) is in the best interests of the Estate because settlement (a) precludes any risks associated with litigation and collection in this matter, (b) provides a dividend available to creditors, and (c) allows for a distribution of sums and proceeds within a reasonable time.

27.    Moreover, the Settlement fully and properly takes into account: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay

necessarily attending it; and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premises.    Therefore, the Court should approve the Settlement.

### REQUEST FOR ENTRY OF ORDER AUTHORIZING PAYMENT OF EARNED 40% CONTINGENCY FEE TO TRUSTEE'S SPECIAL LITIGATION COUNSEL AND GENERAL COUNSEL

28.    Pursuant to the Retention Orders [ECF Nos. 71, 106, and 172] (collectively, the "Retention Orders"), the Court approved the retention of CMM and GJB[2] as special litigation counsel, and FurrCohen, general counsel to the Trustee, as co-counsel to CMM (and previously GJB) on a 40% contingency fee to be allocated between and among the firms as provided under the Retentions Orders.

29.    The Retention Orders provide that the Trustee is authorized to request approval and payment of the 40% contingency fee to CMM, GJB, and FurrCohen in this Motion.

30.    Based upon the foregoing, if the Settlement Agreement is approved, CMM, GJB, and FurCohen request the entry of an order authorizing and approving the payment of the earned 40% contingency fee, which amount totals $300,000, from the $750,000 Settlement Payment, with the allocated fee amount to be paid to each law firm, CMM, GJB, and FurrCohen, to be the subject of a separate order of the Court to be submitted by the law firms after the Settlement is approved by the entry of a final order and fully funded.

### CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully requests that this Court enter an Order: (i) approving the Settlement as set forth in the Settlement Agreement; (ii) granting the Motion; (iii) authorizing the Parties to take any and all actions and to execute any and all documents necessary

---

[2] In April 2018, CMM substituted GJB as court-appointed special litigation counsel to the Trustee after two of its partners departed GJB to form CMM.

and appropriate to implement and effectuate the terms of the Settlement; (iv) authorizing and approving payment of the earned 40% contingency fee to CMM, GJB, and FurrCohen from the Settlement Payment, in accordance with the terms of the Retention Orders, followed by the entry of an order allocating the fee award amongst the three law firms after the entry of a final order approving the settlement and full funding of same; and (v) granting such other and further relief as the Court deems appropriate.

Submitted this 28th day of August, 2018.

CIMO MAZER MARK PLLC
Special Litigation Counsel for the Trustee
100 S.E. 2nd Street, Suite 3650
Miami, FL 33131
T: (305) 374-6482
C: (305) 439-3429
Email: dcimo@cmmlawgroup.com
Email: mmark@cmmlawgroup.com

By:    /s/ David C. Cimo
        David C. Cimo, Esq.
        Fla. Bar No. 775400
        Marilee A. Mark, Esq.
        Fla. Bar No. 725961


And

FURR COHEN
*Attorneys for Trustee*
2255 Glades Road, Suite 301E
Boca Raton, FL 33431
(561) 395-0500; (561)338-7532-fax

By:   /s/ *Jason S. Rigoli*
Jason S. Rigoli, Esq.
Florida Bar No. 91990
E-mail: jrigoli@furrcohen.com

11

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)
www.flsb.uscourts.gov

In re:                                                        Case No.:  16-26113-RBR
                                                              Chapter 7
ENDLESS JEWELRY NORTH AND
SOUTH AMERICA, LLC,

       Debtor.

_____/

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter the "Agreement"), effective as of this 15th day of August, 2018, is entered into by and between: (i) Marc P. Barmat, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Endless Jewelry North and South America, LLC (the "Debtor"), Case No. 16-26113-RBR (the "Bankruptcy Main Case"), pending in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"); and (ii) the following former directors, officers, managers, control persons, and/or employees of the Debtor (individually an "Insured" and collectively, the "Insureds") (a) Matthew Carlozzi ("Carlozzi"), (b) Avinash Tiwari ("Tiwari"), (c) Howard Clarke ("Clarke"), and (d) Ulrik Rasch ("Rasch")[1] (the Insureds and the Trustee shall hereinafter be referred to as the "Parties"):

## RECITALS

**WHEREAS**, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code[2] on December 2, 2016, and Marc P. Barmat, the Trustee, is the duly appointed and acting Chapter 7 Trustee;

**WHEREAS**, the Trustee has the exclusive power, authority, and standing, among other things, to (i) investigate, prosecute, compromise, and otherwise resolve, any and all claims of the Debtor's bankruptcy Estate against the Debtor's former directors, officers, managers, control persons, and/or employees, whether by way of claim, counterclaim, cross-claim, lawsuit, adversary proceeding, bankruptcy proceeding or filing, or other proceeding in law, equity, or otherwise (the "D&O Claims"), and (ii) analyze, object to, and/or seek equitable subordination or recharacterization of claims filed or asserted against the Debtor's bankruptcy Estate by the Debtor's former directors, officers, managers, control persons, and/or employees (the "D&O Claim Objections");

**WHEREAS**, Federal Insurance Company, an affiliate of Chubb Group of Insurance Companies (the "Insurer") issued a ForeFront Portfolio 3.0 Directors & Officers and Entity Liability Insurance Policy, Policy No. 8242-6648 (the "Policy"), to the Debtor with aggregate

---

[1] "Insured Person" and "Insured Persons" as used herein shall mean and include: (i) the Insureds as defined herein; and (ii) Insured Persons as defined in the Policy.

[2] 11 U.S.C. §§ 101, *et seq.*

policy limits of $1,000,000 (the "Policy Limits") and a policy period of April 21, 2016 to April 21, 2017 (the "Policy Period");

WHEREAS, Tiwari and Carlozzi, respectively, timely filed Proof of Claim No. 16 (the "Tiwari Claim"), and Proof of Claim No. 19, as amended (the "Carlozzi Claim"), against the Debtor's Estate;

WHEREAS, prior to the expiration of the Policy Period, the Trustee made a claim against the Insurer and the Insureds demanding payment of the remaining Policy Limits in full satisfaction of the D&O Claims (the "Insurance Demand");

WHEREAS, the Trustee timely asserted D&O Claims and D&O Claim Objections against the Insurer and Insureds, as applicable, in the form of the Insurance Demand and a draft Complaint;

WHEREAS, by agreement of the Parties, the Bankruptcy Court entered an order directing, among other things, that the Parties participate in and attend a mediation conference (the "Mediation") in connection with the D&O Claims [ECF No. 135];

WHEREAS, the Parties and the Insurer participated in the Mediation on June 28, 2018 before the Honorable Judge John K. Olson;

WHEREAS, the Insureds deny any and all liability in connection with the D&O Claims and D&O Claim Objections, and the Trustee denies any and all liability in connection with the Tiwari Claim and Carlozzi Claim;

WHEREAS, as a result of the Mediation and related exchange of information and documents, the Parties have agreed that it is in the best interests of all involved to amicably resolve the D&O Claims, the D&O Claim Objections, the Tiwari Claim, and the Carlozzi Claim on the terms and conditions set forth herein;

WHEREAS, the Parties wish to set forth the terms of their settlement in this Agreement;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, the Parties agree as follows:

1.      **Recitals Incorporated.** The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of this Agreement.

2.      **Effective Date.** Unless otherwise stated, the obligations, representations, and warranties stated in this Agreement shall become effective on the date upon which all of the following conditions precedent have occurred (the "Effective Date"):

(A) the Bankruptcy Court has entered an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Order") approving this Agreement;

2

(B) the 9019 Order has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal, petition for certiorari or move for reargument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such 9019 Order under Rule 9024 of the Federal Rules of Bankruptcy Procedure, Rule 60 of the Federal Rules of Civil Procedure or otherwise, 14 days after the entry of such 9019 Order), or (ii) any appeal, any petition for certiorari or any motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having appellate jurisdiction over the 9019 Order) to which the 9019 Order was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken (upon satisfaction of each condition of Paragraph 2(A) and 2(B) herein, the 9019 Order shall be referred to as the "Final Order"); and

(C)  upon receipt and bank clearance of the Settlement Payment (as defined below).

3.      **Trustee Release to Insureds, Insured Persons, and Insurer, Court Approval, and Agreement to Lift of Automatic Stay.**  Upon occurrence of the Effective Date, the Trustee, solely in his capacity as Trustee and on behalf of the Debtor and the Debtor's Estate, remises, releases and forever discharges the Insureds, the Insured Persons, and the Insurer (including its predecessors, successors, assignees, affiliates, parents, subsidiaries, shareholders, designees, members, partners, directors, officers, employees, agents, representatives and attorneys) of and from the D&O Claims, D&O Claim Objections, and any and all claims, bad faith claims, extra contractual claims, sanctions, damages, demands, suits, debts, actions or causes of action of any kind, both known and unknown, held by the Trustee (solely in his capacity as Trustee and on behalf of the Debtor and the Debtor's Estate), the Debtor, and the Debtor's Estate relating to any act or omission by any Insured or Insured Person in their capacity as an Insured Person, or in any way related to the Debtor or the Debtor's bankruptcy case, including, without limitation, any claim by the Trustee to recover $100,000 from Carlozzi based upon an alleged pre-petition loan made by the Debtor to Carlozzi, any claims sounding in contract, tort, and/or violations of any federal or state statute or regulation, whether at law or in equity, direct or derivative, suspected or unsuspected, that the Trustee ever had or may now or hereafter own, hold, have or claim to have by reason of any matter, cause or thing whatsoever from the beginning of the world to the Effective Date against any Insured or Insured Person, whether such claim was made or could have been made; provided, however, that nothing contained herein shall release the Insurer or the Insureds from any obligations under this Agreement.  In making this release to the Insureds, Insured Persons, and Insurer, the Trustee understands and acknowledges that he may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of this release, but agrees that he has taken that possibility into account in reaching this Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which he expressly assumes the risk, the Trustee fully, finally, and forever settles and releases any and all claims against the Insureds, Insured Persons, and Insurer as set forth herein.

3

Upon occurrence of the Effective Date, the Trustee, solely in his capacity as Trustee and on behalf of the Debtor and the Estate of the Debtor, further fully releases all claims, rights, or title to any coverage, claims, or proceeds under the Policy which the Debtor, its Estate, or the Trustee claims to have now or may have in the future concerning the Policy and hereby gives the Insurer a complete and full release under the Policy.

Notwithstanding the foregoing, this Agreement is without prejudice to and nothing herein shall operate or be construed to operate as a compromise, impairment, release, waiver, or as having any effect whatsoever on any and all claims which have been or may be asserted by the Trustee against any third parties that are not the Insureds, Insured Persons, or the Insurer, including but not limited to any claims against Endless International GmbH ("Endless Europe"), a Netherlands company headquartered and registered in Germany and its directors, officers, managers, control persons, and/or employees.

The Parties agree that upon satisfaction of each condition of Paragraph 2(A) and 2(B) of this Agreement, the automatic stay shall be lifted, to the extent it may be applicable, to permit the Insurer to: (i) make the Settlement Payment set forth in Paragraph 5; and (ii) to the extent applicable, pay defense costs totaling up to $250,000, inclusive of and not in addition to any prior defense costs payments, without further approval from the Bankruptcy Court, pursuant to the terms of the Policy, after the Settlement Payment has been made to the Trustee as set forth herein.

The Trustee, solely in his capacity as Trustee and on behalf of the Debtor and the Estate of the Debtor, represents and warrants to the Insureds and Insurer that: (a) he has all right, title, and authority necessary to provide the release given in this Agreement; (b) he has not assigned, conveyed, sold, or transferred or attempted to assign, convey, sell, or transfer any of the claims released pursuant to this Paragraph 3, including, without limitation, any claims arising out of, based upon, or in any way involving any circumstance, event, fact, or transaction alleged or that could have been alleged against the Insureds or against the Insurer; (c) he has not commenced and is not prosecuting any arbitration or proceeding against the Insureds anywhere in the world other than the Debtor's Bankruptcy Main Case; (d) he has not, and upon occurrence of the Effective Date, will not in the future solicit or accept any assignment of a claim of *any kind* against the Insureds or Insurer (but solely as Insurer under the Policy and solely with respect to the Debtor and the Debtor's Estate); and (e) upon occurrence of the Effective Date, he will not request the Insureds or Insurer to defend, indemnify, or satisfy any claim(s) or award(s) made against any Insured.

4.      **Insureds Release to the Trustee, the Debtor, and the Debtor's Estate.**  Except as otherwise provided in Paragraph 6 of this Agreement in connection with the Tiwari Claim and Carlozzi Claim, upon occurrence of the Effective Date, the Insureds remise, release, and forever discharge the Trustee (solely in his capacity as Trustee and on behalf of the Debtor and the Debtor's Estate), the Debtor, and the Debtor's  Estate of and from any and all claims, sanctions, extra contractual claims, damages, demands, suits, debts, actions or causes of action of any kind relating to the Debtor, the Debtor's Estate, the Bankruptcy Main Case, the D&O Claims and D&O Claim Objections, including, without limitation, claims sounding in contract, tort, violations of any federal or state statute or regulation, contribution, indemnity, and/or any and all claims against the Estate, including any and all pre- or post-petition claims against the Estate of the Debtor, and any and all such claims, to the extent they exist or are claimed to exist, including a claim

4

against the Debtor's Estate for payment of the Settlement Payment pursuant to 11 U.S.C. § 502(d) and (h), whether at law or in equity, direct or derivative, known or unknown, or suspected or unsuspected, that the Insureds may now have or may have in the future by reason of any matter, cause or thing whatsoever from the beginning of the world to the Effective Date, whether such claim was made or could have been made; provided, however, that nothing contained herein shall release the Trustee from any obligations under this Agreement. In making this release to the Trustee (solely in his capacity as Trustee and on behalf of the Debtor and the Debtor's Estate), the Debtor, and the Debtor's Estate, the Insureds understand and acknowledge that they may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of this release, but agree that they have taken that possibility into account in reaching this Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Insureds expressly assume the risk, the Insureds fully, finally, and forever settle and release any and all claims against the Trustee (solely in his capacity as Trustee and on behalf of the Debtor and the Debtor's Estate), the Debtor, and the Debtor's Estate as set forth herein.

The Insureds represent and warrant to the Trustee that: (a) they have all right, title, and authority necessary to provide the release given in this Agreement; (b) they have not assigned, conveyed, sold, or transferred or attempted to assign, convey, sell, or transfer any of the claims released pursuant to this Paragraph 4; (c) they have not commenced and are not prosecuting any arbitration or proceeding against the Trustee (on behalf of the Debtor and the Debtor's Estate), the Debtor, or Debtor's Estate anywhere in the world; (d) they have not, and upon occurrence of the Effective Date, will not in the future solicit or accept any assignment of a claim of *any kind* against the Trustee, the Debtor, or Debtor's Estate; and (e) upon occurrence of the Effective Date, they will not request the Trustee, the Debtor, or Debtor's Estate to defend, indemnify, or satisfy any claim(s) or award(s) made against any Insured.

5.    **Settlement Payment.** For and in consideration of each of the terms set forth herein, as full and final settlement of the D&O Claims and any and all claims which have been or could be asserted by the Trustee against the Insureds or Insured Persons, the Insureds shall cause the Insurer to pay on the Insureds' behalf the sum of SEVEN HUNDRED FIFTY THOUSAND DOLLARS AND 00/100 ($750,000.00 U.S.) (the "Settlement Payment"). The Insurer shall pay the Settlement Payment in the form of a check for good and collectable funds made payable to "Marc P. Barmat, Chapter 7 Trustee of the Endless Jewelry North and South America, LLC Bankruptcy Estate", which check shall be tendered to the Trustee at his office address: c/o Marc P. Barmat, Chapter 7 Trustee, FurrCohen, P.A., 2255 Glades Road, Suite 301 East, Boca Raton, FL 33431, via Federal Express. The Insurer shall pay the Settlement Payment within ten (10) days of the Final Order (satisfaction of each condition of Paragraph 2(A) and 2(B) of this Agreement and receipt of a W-9 for the Trustee, whichever is later). The Parties understand that no Insured is obligated to make all or part of the Settlement Payment.

6.    **Allowance of Claims.** Notwithstanding anything to the contrary herein, in full and final satisfaction of the Carlozzi Claim, the Tiwari Claim, and the D&O Claim Objections: (i) Carlozzi shall have an allowed claim against the Estate in the amount of $350,000, with $12,850 constituting a priority claim pursuant to 11 U.S.C. §507(a)(4) and $337,150 constituting a general

5

unsecured claim; and (ii) Tiwari shall have an allowed general unsecured claim in the amount of $274,559.

      7.    **Non-Approval.**  In the event the Agreement is not approved by the Bankruptcy Court or the Effective Date does not occur, nothing herein shall be deemed a representation or admission by any Party as to any issue, and this Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date, except to the extent the Parties execute any tolling agreement.  The Parties shall be returned to the *status quo* each Party held prior to entry into this Agreement, except any executed tolling agreement shall remain in full force and effect.

      8.    **No Admissions.** This Agreement is entered into for settlement and compromise of disputed claims and shall never be treated as an admission by any Party of any liability whatsoever or as an admission by any Party of any violation of the rights of any other Party or person, or the violation of any law, statute, regulation, duty or contract whatsoever.  By entering into this Agreement, the Parties do so solely to avoid the inconvenience, expense, and uncertainty of further proceedings and expressly disclaim any liability to any other party or person.

      9.    **Attorneys' Fees and Costs.**  Each Party will bear its own expenses, including any costs or attorneys' fees incurred in connection with the negotiation and execution of this Agreement, obtaining a Final Order approving the Agreement, the D&O Claims, the D&O Claim Objections, and the Bankruptcy Main Case, except that the Insureds' defense costs are reimbursable according to the terms of the Policy; provided, however, that in no event shall defense costs be paid from the Policy which would deplete the remaining Policy limits below the Settlement Payment amount of $750,000.00 as set forth in Paragraph 5 of this Agreement.  Subject to the restrictions and limitations of Paragraph 13 below, in the event that a Party hereto initiates a lawsuit or other proceeding to enforce the provisions of this Agreement or asserts the provisions of this Agreement as a defense to a lawsuit or other proceeding brought by any other Party, the Party prevailing in such lawsuit or civil proceeding shall be paid, in addition to all other sums that may be required to be paid, a reasonable sum for the prevailing Party's attorneys' fees and costs of action, including paralegal fees and any fees and costs on appeal.

      10.    **Notices**.  All notices or information to be provided under this Agreement shall be sent to the following:

          a.  The Trustee:            David C. Cimo, Esq.
                                                Marilee A. Mark, Esq.
                                              Cimo Mazer Mark PLLC
                                                100 S.E. 2nd Street, Suite 3650
                                                Miami, FL 33131
                                                Tel: (305) 374-6480
                                                  Email: dcimo@cmmlawgroup.com
                                                  Email: mmark@cmmlawgroup.com

6

Robert C. Furr, Esq.
FurrCohen P.A.
2255 Glades Road, Suite 301 East
Boca Raton, FL 33431
Tel: 561-395-0500
Email: rfurr@furrcohen.com

b. Carlozzi, Tiwari, and
   Clarke:

D. Brett Marks, Esq.
Eyal Berger, Esq.
Akerman LLP
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
Tel: (954) 463-2700
Email: brett.marks@akerman.com
Email: eyal.berger@akerman.com

c. Rasch:

Edward F. Donohue, Esq.
Hinshaw & Culbertson LLP
One California Street, 18th Floor
San Francisco, CA 94111
Tel: 415-263-8158
Email: EDonohue@hinshawlaw.com

d. Federal Insurance
   Company:

Alan D. Chute
Assistant Vice President
Chubb & Son, a division of
Federal Insurance Company
120 Fifth Avenue Place
Pittsburgh, PA 15222
Tel: 412-456-8941
Email: achute@chubb.com

11.    **Entire Agreement.**  As set forth in and contemplated by that certain Settlement Term Sheet executed on June 28, 2018, this Agreement constitutes the full agreement of settlement among the Parties, and the Parties acknowledge that there are no other warranties, promises, assurances or representations of any kind, express or implied, upon which the Parties have relied in entering into this Agreement, unless expressly set forth herein.  This Agreement shall not be modified except by written agreement signed by the Party against whom modification is sought.

12.    **Parties Affected.**  This Agreement shall inure to the benefit of the Parties and their officers, directors, shareholders, employees, partners, attorneys, professionals, affiliates, representatives, spouses, trustees, heirs, successors, and assigns.

13.    **Governing Law/Forum Selection.**  The Parties agree that the Bankruptcy Court shall have continuing jurisdiction to enforce the terms of this Agreement and regarding the

interpretation, effectuation, and enforcement of the terms of this Agreement and the Final Order approving this Agreement. The Parties expressly consent to the exercise of personal jurisdiction over them for that limited purpose. This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of law principles.

14.    **Acknowledgment of Terms.**  The Parties have read and understand the terms of this Agreement, have consulted with their respective counsel, and understand and acknowledge the significance and consequence of each such term.  No Party is relying on information provided by or from the other Party in entering this Agreement and there are no duties of disclosure by either Party to the other. This Agreement was executed after arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that this Agreement is in the best interests of the Parties. Each Party represents and warrants that the person executing this Agreement on his, her, or its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this settlement and shall survive execution of this Agreement.

15.    **Advice of Counsel.**  The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement, have read this Agreement, and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of same.  The Parties have had the Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Agreement and its nature and effect.  The Parties further represent that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

16.    **Severability.**  If any term of this Agreement is deemed unenforceable, void or against public policy by a Court of competent jurisdiction, that term shall be severed without affecting the remainder of this Agreement.

17.    **Neutral Interpretation.**  In the event any dispute arises among the Parties with regard to the interpretation of any term of this Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

18.    **Execution of Documents.**  This Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Agreement.  The Parties may execute this Agreement and create a complete set of signatures by exchanging PDF copies of the executed signature pages. Signatures transmitted in PDF format shall have the same effect as original signatures.

19.    **Divisions and Headings.**  The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

8

IN WITNESS WHEREOF, the Parties have executed this Agreement as follows:

Dated: _8/14/18_

_____
MARC P. BARMAT, as Chapter 7 Trustee
for the bankruptcy estate of the Debtor, Endless
Jewelry North and South America, LLC

Dated: _8 - 14 - 18_

_____
MATTHEW CARLOZZI

Dated: _____

_____
AVINASH TIWARI

Dated: _6/14/2018_

_____
HOWARD CLARKE

Dated: _____

_____
ULRIK RASCH

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as follows:

Dated: 8/14/18

MARC P. BARMAT, as Chapter 7 Trustee
for the bankruptcy estate of the Debtor, Endless
Jewelry North and South America, LLC

Dated: _____

MATTHEW CARLOZZI

Dated: August 14 2018

AVINASH TIWARI

Dated: 8/14/2018

HOWARD CLARKE

Dated: _____

ULRIK RASCH

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as follows:

Dated: _____

_____
MARC P. BARMAT, as Chapter 7 Trustee
for the bankruptcy estate of the Debtor, Endless
Jewelry North and South America, LLC

Dated: _____

_____
MATTHEW CARLOZZI

Dated: _____

_____
AVINASH TIWARI

Dated: _8/14/2018_

_____
HOWARD CLARKE

Dated: _8/15/2018_

_____
ULRIK RASCH

9